**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

LISA BLAKE,

                            Plaintiff,

      v.

GUTHY-RENKER, LLC, et al.

                            Defendants.

Case No. 3:11-cv-00069-SLG

## ORDER RE MOTION FOR SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment filed by Defendants Guthy-Renker, LLC and Guthy-Renker Partners, Inc. (collectively "Guthy-Renker") on May 10, 2013.[1]  Plaintiff Lisa Blake opposed the motion on June 11, 2013, and Defendants replied on July 10, 2013.[2]  Neither party requested oral argument and this Court has determined that it was not necessary to resolve the motion.  For the reasons set forth below, the motion will be granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts, viewed in the light most favorable to Ms. Blake for purposes of this motion, are as follows:  Guthy-Renker advertises, sells and distributes a product called Sheer Cover Nourishing Moisturizer SPF 15 ("Moisturizer").[3]  The Moisturizer appears to be intended for facial use.[4]  Guthy-Renker contracts with Corwood Laboratories to

---

[1] Docket 57 (Mot.).  Leeza Gibbons and Leeza Gibbons Enterprises, Inc. originally joined the motion, but these parties were later dismissed by stipulation of the parties.  Docket 65 (Stipulation to Dismiss); Docket 67 (Partial Order of Dismissal).

[2] Docket 62 (Opp.); Docket 70 (Reply).

[3] Docket 58 at 1-2 (Mot.).

[4] S*ee, e.g.,* Docket 62-8 at 1 (Ex. 7 to Opp: Blake Dep.).

manufacture the product.[5]  On May 5-6, 2009, Guthy-Renker conducted its annual audit of Corwood Laboratories.[6]  Keith Nelson, Guthy-Renker's Quality Assurance Director, issued an executive summary of this audit on June 9, 2009.[7]  The audit found that microbiological testing results indicated high bacteria counts for certain Moisturizer batches.[8]  Further testing indicated that the batches contained pseudomonas putida and staphylococcus xylosus.[9]

On May 5, 2009, Ms. Blake purchased through the mail a bottle of the Moisturizer from Guthy-Renker after seeing an infomercial about the Sheer Cover product line.[10] She received the product on May 11, 2009.[11]  The product came with a letter, which stated "[y]ou're about to discover the secret to flawless-looking skin" and "you can simply brush imperfections away in seconds."[12]  The letter also stated that the "Sheer Cover is very different from other makeup you've tried," "[y]ou can experiment with

_____

[5] Docket 58-3 at 1 (Ex. C to Mot.: 2009 Executive Summary); Docket 62-7 at 15 (Ex. 5 to Opp.: Keith Nelson Dep.).

[6] Docket 58-3 at 1 (2009 Executive Summary).

[7] Docket 62-7 at 3 (Nelson Dep.); Docket 58-3 at 2 (2009 Executive Summary).

[8] Docket 58-3 at 1 (2009 Executive Summary).

[9] Docket 62-7 at 5 (Nelson Dep.).

[10] Docket 30 at 2 ¶ 1 (Am. Compl.); Docket 32 at 2 ¶ I (Am. Answer).  The contents of this infomercial are not included in the record.

[11] Docket 58-2 at 1 (Ex. B to Mot.: Lisa Blake Dep.); Docket 62-8 (Ex. 7 to Opp.: Blake Dep.).

[12] Docket 62-9 at 1 (Ex. 8 to Opp.: Advertising Letter).

coverage," and "[y]ou'll see how easy it is to have a natural, flawless look."[13] Ms. Blake began applying the product to her face.[14]

In a letter dated August 27, 2009, Guthy-Renker informed its Moisturizer customers that some of the bottles of the Moisturizer "may have been contaminated with a very low level of common bacteria."[15] The mailing contained a toll-free telephone number for recipients to call and included a replacement bottle of the product.[16] Ms. Blake received the letter in early September 2009.[17]

Ms. Blake asserts that the Moisturizer has caused injuries to her face, infection, disfigurement, psychological distress, and impacted her employment.[18] Ms. Blake supports her contention that the Moisturizer caused these problems with the testimony of Dr. Gary Richwald, who concluded that "[t]he likely source of Lisa Blake's initial facial infection was Guthy-Renker's Sheer Cover Nourishing Moisturizer Cream SPF 15" and "[t]his product was also the likely source of recurring infections up to the time Lisa Blake stopped using this product in September 2009."[19] Dr. Richwald also concluded that:

> This approximately four-month time period from when Guthy-Renker was
> first notified of having distributed a contaminated cosmetic product to the

---

[13] Docket 62-9 at 1 (Advertising Letter).

[14] Docket 62-8 at 1 (Blake Dep.) ("…it's similar to like a bare mineral, meaning you've got the mineral foundations, which is a mineral light coverage for your face"); Docket 62-1 at 3 (Ex. 1 to Opp.: Dr. Richwald Opinion).

[15] Docket 58-7 at 1 (Ex. G to Mot.: 8/27/09 Letter to Customers).

[16] Docket 58-7 at 1 (8/27/09 Letter to Customers).

[17] Docket 58-2 at 1 (Blake Dep.).

[18] Docket 30 at 2-3 ¶ 2 (Am. Compl.); Docket 62-1 at 3, 5 (Richwald Opinion).

[19] Docket 62-1 at 3 (Ex. 1 to Opp.: Richwald Opinion).

time Guthy-Renker noti[fied] customers who had received this product, represents an unreasonable and dangerous delay from a health and safety perspective.[20]

Dr. Richwald asserts that "[t]his delay was further extended by Guthy-Renker withholding the names of the specific bacteria involved in the contamination until Ms. Blake called . . . and demanded to know which bacteria were involved."[21] Dr. Richwald concluded that "[a]s a result of the delay in discovering the source of her recurrent skin infections, Lisa Blake's doctors were unable to properly diagnose her skin problems."[22]

Guthy-Renker vigorously disputes Ms. Blake's version of the facts, and instead contends that Ms. Blake's skin infection resulted from her pre-existing conditions including hypertrichosis, excessive hair growth with sores and scarring resulting from chronic picking or hair-plucking.[23] Guthy-Renker references several incidents in Ms. Blake's medical history that contributed to her infection and disfigurement. Guthy-Renker contends that Ms. Blake has also been diagnosed with acne several times, but has refused to follow the directions given by health care providers and take the medications prescribed. [24]

Ms. Blake initiated this action against Guthy-Renker, LLC and Guthy-Renker Partners, Inc. in Alaska Superior Court on March 11, 2011.[25] Guthy-Renker removed

---

[20] Docket 62-1 at 4 (Richwald Opinion).

[21] Docket 62-1 at 4 (Richwald Opinion).

[22] Docket 62-1 at 4 (Richwald Opinion).

[23] Docket 58-17 at 3 (Ex. Q to Mot.: Dr. Resneck Report).

[24] Docket 58-16 at 1 (Ex. P to Mot.: Blake Dep.).

[25] Docket 1-2 (Compl).

the action to federal court on the basis of diversity on April 8, 2011.[26] Ms. Blake filed an

Amended Complaint on January 4, 2012, which asserts claims for strict liability,

negligence, implied warranty, express warranty, failure to warn/recall,

misrepresentation/omissions, infliction of emotional distress, and violation of consumer

protection laws. She also seeks punitive damages.[27] Guthy-Renker seeks summary

judgment on all claims.

### *DISCUSSION*

### I. Jurisdiction.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332.

### II. Analysis.

#### A. Summary Judgment Standard.

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." The burden of showing the absence

of a genuine dispute of material fact initially lies with the moving party.[28] If the moving

party meets this burden, the non-moving party must present specific factual evidence

demonstrating the existence of a genuine issue of fact.[29] The non-moving party may

---

[26] Docket 1 (Notice of Removal).

[27] Docket 30 (Am. Compl.). The Amended Complaint also alleged claims on behalf of Ms. Blake's minor children, M.A.C., G.E.C., N.A.C., and M.R.B. *See* Docket 30. These claims have been dismissed with prejudice. Docket 47 at 1 (Order Granting Stipulation to Dismiss Children).

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[29] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986).

not rely on mere allegations or denials.[30]  She must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[31]  A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[32]

"The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."[33]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[34]  To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[35] The non-moving party "must do more than simply show that there is some metaphysical

---

[30] *Id.* at 248-49.

[31] *Id.* (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968)).

[32] Fed. R. Civ. P. 56(c)(1).

[33] *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

[34] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[35] *Id.* at 248.

doubt as to the material facts."[36]  If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[37]

Ms. Blake asserts that "[t]he Defendants have not . . . complied with the local rules to provide admissible evidence to meet their burden of proof.  Defendants had supported their motion with the unverified reports of two defense experts, which is not n compliance with Local Rule 7.1(a)(4)[A].  Defendants have since rectified the deficiencies in this regard by appending the declarations of their experts attesting to the opinions set forth in the expert reports, and Plaintiff has suffered no prejudice from this correction.  Thus, this Court has considered Defendants' expert reports and subsequent declarations for purposes of this motion.

As this is a diversity action, this Court applies federal law to procedural issues and Alaska law to substantive legal issues.[38]

## B.  Count 1: Strict Liability

In her first cause of action, Ms. Blake alleges that:

Defendants are strictly liable for defective design and/or manufacture and/or quality control of the product.  The product failed to perform as an ordinary consumer would expect.  The defendants failed to also warn plaintiffs of the dangers in the product as to the design and/or manufacture and/or quality control of same and promptly recall the product."[39]

---

[36] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587 (1986)).

[37] *Anderson*, 477 U.S. at 249.

[38] *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir. 2001) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996))).

[39] Docket 30 at 6 ¶ 12 (Am. Compl.).

Under Alaska law, "[a] product may be defective because of a manufacturing defect, a defective design, or a failure to contain adequate warnings."[40] These categories may overlap.[41] However, a manufacturer is strictly liable "when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being."[42]

Here, Guthy-Renker "admits that its product was not free from defect," but contends that "plaintiff has failed to produce even a scintilla of evidence to demonstrate that her use of the product caused her any damages."[43] Ms. Blake contends that "Dr. Richwald's testimony [regarding causation] establishes a genuine issue of fact.[44] In this regard, he opines as follows:

> The likely source of Lisa Blake's initial facial infection was Guthy-Renker's Sheer Cover Nourishing Moisturizer Cream SPF 15, contaminated with bacteria Pseudomonas putida and Staphylococcus xylosus. This product was also the likely source of recurring infections up to the time Lisa Blake stopped using this product in September 2009.[45]

Ms. Blake has produced sufficient evidence to demonstrate a genuine issue of material fact on causation. Thus, summary judgment is not appropriate on this claim.

## C. Count 2: Negligence

[40] *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1194 (Alaska 1992) (citing *Caterpillar Tractor Co. v. Beck*, 593 P.2d 871, 878 n. 15 (Alaska 1979)).

[41] *Colt Indus. Operating Corp., Quincy Compressor Div. v. Frank W. Murphy Mfr., Inc.*, 822 P.2d 925, 930 (Alaska 1991).

[42] *Shanks*, 835 P.2d at 1194 (quoting *Clary v. Fifth Ave. Chrysler Ctr.*, 454 P.2d 244, 247 (Alaska 1969)).

[43] Docket 58 at 7 (Mot.).

[44] Docket 62 at 35 (Opp.).

[45] Docket 62-1 at 3 (Richwald Opinion).

In her second cause of action, Ms. Blake alleges:

Defendants were negligent per se and were negligent in the manner in which they designed the defective product and the components of same, in the manner in which they caused and/or allowed the defective product to be manufactured and/or the manner in which they inspected and/or sold and/or warranted and/or advertised same, and failing to adequately warn of the dangers attributed to the use of the subject product, and recall.[46]

To be held liable for negligence per se, a defendant must have violated a law, regulation, or ordinance.[47] Here, Ms. Blake has not identified any statute or regulation that was violated by Guthy-Renker's actions.[48] Therefore, as a matter of law, she cannot maintain a claim for negligence per se.

In order to establish a prima facie case of ordinary negligence, the plaintiff must present evidence to satisfy the following elements: (1) duty, (2) breach of duty, (3) causation, and (4) harm.[49] "Even if an individual is negligent, that person is not liable at common law for another's injuries unless the negligence is a legal (i.e., proximate) cause of those injuries."[50]

---

[46] Docket 30 at 7 ¶ 14 (Am. Compl.).

[47] *See* Alaska Civil Pattern Jury Instruction 3.04A; *Pagenkopf v. Chatham Elec., Inc.*, 156 P.3d 634, 647 (Alaska 2007) ("We have recognized that the violation of a regulation or statute amounts to negligence as a matter of law—that is, negligence per se—when the statute or regulation at issue defines a standard of conduct that a reasonable person is expected to follow under the circumstances presented." (internal citation omitted)).

[48] The only regulation that is cited in the entire briefing is a reference to a California regulation cited in support of Ms. Blake's consumer protection claim. As no regulation has been cited here, this body of law is not applicable.

[49] *Lyons v. Midnight Sun Transp. Servs., Inc.*, 928 P.2d 1202, 1204 (Alaska 1996).

[50] *State v. Will*, 807 P.2d 467, 470-71 (Alaska 1991) (citing *Alvey v. Pioneer Oilfield Servs., Inc.*, 648 P.2d 599, 600 (Alaska 1982)).

Guthy-Renker asserts it is entitled to summary judgment on this claim. It "admits that it has a duty to provide a product which is free from a defect which would cause harm to its consumers . . . [and] admits that a low-level of non-pathogenic bacteria in the Sheer Cover product could result in a breach of this duty."[51] However, Guthy-Renker asserts that Ms. "Blake has not and cannot produce any evidence that the low level of the non-pathogenic bacteria . . . in the product caused any health problems which resulted in any damages."[52] Instead, Guthy-Renker maintains that "Blake suffers from pre-existing conditions which are not the responsibility of and are out of the control of the defendants."[53]

Ms. Blake contends that "Defendants['] incentive was to market their beauty products . . . [and t]he Defendants were concerned about what to do and consulted their legal department and waited four (4) months to notify (inadequately) consumers."[54] Ms. Blake also contends that the "obligation to act reasonably may create liability for inaction if a reasonably prudent person would have foreseen the probability of harm resulting from the failure to act."[55] And, Ms. Blake maintains that "Dr. Richwald's testimony establishes a genuine issue of fact" regarding causation.[56]

---

[51] Docket 58 at 6 (Mot.).

[52] Docket 58 at 7 (Mot.).

[53] Docket 58 at 7 (Mot.).

[54] Docket 62 at 35 (Opp.).

[55] Docket 62 at 35 (Opp.) (citing *State v. Guinn*, 555 P.2d 530, 536 (Alaska 1976)).

[56] Docket 62 at 35 (Opp.). *See also* Docket 62-3 at 21-22 (Ex. 2 to Opp.: Dr. Richwald Testimony) ("The first part of a diagnosis would have been that she applied a contaminated face cream . . . and as a result of this application . . . she developed a syndrome of – the right way to say this – skin irritation and inflammation.").

As discussed above, there is a genuine issue of material fact regarding whether the Sheer Cover product caused the skin infection and other losses that Ms. Blake has attested that she has incurred. Thus, summary judgment is inappropriate on this negligence claim.

### D. Count 3: Implied Warranty

Ms. Blake alleges that "Defendants are liable due to breach of one or more implied warranties under the law."[57] Two implied warranties under Alaska law may apply here: the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. Alaska Statute § 45.02.314 contains the implied warranty of merchantability, which requires that goods sold by merchants "be fit for the ordinary purposes for which the goods are used" and "conform to the promises or affirmations of fact made on the container or label."[58] Alaska Statute § 45.02.315 contains the implied warranty of fitness for a particular purpose and provides, "If the seller at the time of contracting has reason to know a particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified . . . , an implied warranty that the goods shall be fit for that purpose."

Guthy-Renker contends that "implied warranty is a contract claim" and therefore, "if a breach occurs, the end result is to put the person back into the position they were in prior to the contract."[59] Guthy-Renker asserts that it "replaced the product containing

---

[57] Docket 30 at 7 ¶ 16 (Am. Compl.).

[58] AS 45.02.314(b)(3) & (6).

[59] Docket 58 at 8 (Mot.).

the potential defect" and "offered a toll free number if any consumer was not satisfied with the replacement" so "[t]herefore, this issue is moot."[60]

However, damages under an implied warranty claim are not necessarily limited to a replacement product. Alaska Statute § 45.02.714 provides that if either warranty is breached, a buyer that has accepted the goods may recover not only economic damages, but "in a proper case," incidental and consequential damages as well.[61] And pursuant to AS 45.02.715, consequential damages may include "injury to person or property proximately resulting from a breach of warranty."[62]

Thus, if Ms. Blake prevails on her implied warranty claim, she may be able to recover consequential damages resulting from injury to her person "proximately resulting" from the breach. As genuine issues of material fact exist regarding the causation and the nature of Ms. Blake's injuries, summary judgment is not appropriate on this claim.

### E. Count 4: Express Warranty

Ms. Blake's First Amended Complaint next alleges that "Defendants are liable due to breach of one or more express warranties under the law."[63] Alaska law recognizes express warranties that are created by the seller as follows:

(1) an affirmation of fact or promise made by the seller to the buyer that relates to the goods and becomes part of the basis of the bargain creates

---

[60] Docket 58 at 8 (Mot.).

[61] AS 45.02.714-.715.

[62] AS 45.02.715(b)(2).

[63] Docket 30 at 7 ¶ 18 (Am. Compl.).

an express warranty that the goods shall conform to the affirmation or promise;

(2) a description of the goods that is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description;

(3) a sample or model that is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.[64]

Although "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that the seller have a specific intention to make a warranty, . . . an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion of commendation of the goods does not create a warranty."[65]

Guthy-Renker asserts that "Sheer Cover Nourishing Moisturizer SPF 15 contained no express warranty" and "[t]herefore, this body of law is not relevant to the instant litigation and all such claims should be dismissed."[66]

Ms. Blake asserts "the Defendants produced infomercials which enticed people such as [her] to buy the product."[67] She maintains they "also provided glowing claims as to their products," including "that Defendants have 'the secret to flawless looking skin,' that their make-up is 'very different from other make-up you've ever tried.'"[68]

---

[64] AS 45.02.313(a).

[65] AS 45.02.313(b).

[66] Docket 58 at 8 (Mot.).

[67] Docket 62 at 36 (Opp.). The contents of these infomercials are not part of the record so there is no basis for this Court to determine if these infomercials were anything other than the seller's opinion of commendation of the goods.

[68] Docket 62 at 36 (Opp.).

The advertising claims about "the secret to flawless looking skin" and the Moisturizer being "very different from other make-up" are vague, subjective assertions that are not actionable as express warranties, but are rather the seller's opinion of commendation about the product. Ms. Blake has not demonstrated a genuine issue of fact regarding the existence of an express warranty on the product. Accordingly, Guthy-Renker is entitled to summary judgment on this claim as a matter of law.

### F. Count 5: Failure to Warn/Recall

Ms. Blake's Amended Complaint next alleges that "Defendants are liable due to their failure to warn and recall in violation of their duty to do so."[69] Under Alaska law,

> (a) One engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.
>
> (b) A reasonable person in the seller's position would provide a warning after the time of sale if:
>
> (1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
>
> (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and
>
> (3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
>
> (4) the risk of harm is sufficiently great to justify the burden of providing a warning.[70]

---

[69] Docket 30 at 8 ¶ 20 (Am. Compl.).

[70] RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 10 (1998); *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 335-36 (Alaska 2012) (adopting RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 10).

Guthy-Renker addresses this claim as part of its strict liability argument, asserting that because Ms. Blake has not produced evidence demonstrating that the Moisturizer caused her any damages, it is entitled to summary judgment as a matter of law.[71]  Ms. Blake contends that "Dr. Richwald's testimony establishes a genuine issue of fact."[72]  Although this claim is closely related to the general strict liability claim, a post-sale duty to warn consumers of dangers that are potentially life-threatening is recognized as a separate claim under Alaska law.[73]  However, as genuine issues of material fact exist regarding the need for and the timing of Defendant's warning, summary judgment is not appropriate on this claim.

### G. Count 6: Misrepresentation/Omissions

Ms. Blake's First Amended Complaint next alleges that "Due to the nature of the contamination Defendants knew or should have known that their products were being manufactured in an unsanitary and/or unsafe manner, which could result in contamination by bacteria.  Through infomercials and other means, Defendants have been actively advertising that their products are safe and effective all over the country including Alaska and said conduct was negligent, and/or reckless."[74]

Under Alaska law, the tort of negligent misrepresentation comprises four elements:

---

[71] Docket 58 at 7 (Mot.).

[72] Docket 62 at 35 (Opp.).

[73] *See Jones*, 282 P.3d at 336.

[74] Docket 30 at 8 ¶ 22 (Am. Compl.).

First, the tortfeasor must have made a statement in the course of business, employment, or some other enterprise in which he had a pecuniary interest. Second, the statement must have been false when the tortfeasor made it. Third, the victim must have justifiably relied upon the statement to his detriment. Fourth, the tortfeasor must have failed to exercise reasonable care when making the statement.[75]

Ms. Blake essentially contends that Guthy-Renker falsely misrepresented its product as safe, and she relied on infomercials and advertising that represented the product as safe. And she maintains that Guthy-Renker failed to exercise reasonable care when it represented that the product was safe. But she does not point to any place in the record where a specific representation or statement regarding safety of the product is made. As discussed in the context of express warranties, the seller's opinion regarding its own product, such as that it contains "the secret to flawless looking skin," is not actionable as a negligent misrepresentation regarding the product. As Ms. Blake has not presented any evidence demonstrating a genuine issue of fact regarding Guthy-Renker's representations about the product, Guthy-Renker is entitled to summary judgment on this claim.

### H. Count 7: Infliction of Emotional Distress

Ms. Blake's First Amended Complaint alleges that "[t]he conduct of Defendants was outrageous and/or reckless and/or negligent and caused Plaintiffs to suffer severe emotional distress."[76] Emotional distress can be caused either intentionally or negligently. Here, it is not clear which type of emotional distress is being pled.

---

[75] *S. Alaska Carpenters Health and Sec. Trust Fund v. Jones*, 177 P.3d 844, 857 (Alaska 2008) (internal citations omitted).

[76] Docket 30 at 9 ¶ 24 (Am. Compl.). In the original Complaint, Ms. Blake asserted this claim as a violation of the tort of outrage. Docket 1-2 at 6 (Compl.). This claim has been renamed as infliction of emotional distress.

"To establish a prima facie case of intentional infliction of emotional distress, the plaintiff must prove that the defendant through extreme or outrageous conduct intentionally or recklessly caused severe emotional distress or bodily harm to another."[77] This is a high standard to meet as liability "should only be found when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[78] Negligent infliction of emotional distress is a separate claim, for which damages are generally not awarded "in the absence of physical injury."[79]

Guthy-Renker asserts that Ms. "Blake has not met any of the . . . criteria required to establish viability for her claim whether based upon the tort of outrage or for intentional infliction of emotional distress."[80] This Court finds that Ms. Blake has not presented sufficient evidence that would permit a reasonable jury to conclude that a four-month delay in notification is so outrageous as to go "beyond all possible bounds of decency." Therefore, Ms. Blake cannot maintain a claim for intentional infliction of emotional distress and summary judgment is granted to Defendants on such a claim.

---

[77] *Lybrand v. Trask*, 31 P.3d 801, 803 (Alaska 2001) (internal citation and citation marks omitted).

[78] *Lybrand*, 31 P.3d at 803 (internal citation and citation marks omitted).

[79] *Kallstrom v. U.S.*, 43 P.3d 162 (Alaska 2002) (citing *Hancock v. Northcutt*, 808 P.2d 251, 257 (Alaska 1991)); *see also Chizmar v. Mackie*, 896 P.2d 196, 201 (Alaska 1995) ("[A] plaintiff may not recover damages for negligently caused emotional distress absent a physical injury, a viable bystander claim, or a breach of contractual duty that, by its nature, 'is particularly likely to result in serious emotional disturbance.'" (quoting *Hancock*, 808 P.2d at 257-59)).

[80] Docket 70 at 13 (Reply).

Regarding negligent infliction of emotional distress, Guthy-Renker maintains that Ms. "Blake suffered no physical harm from her use of the Sheer Cover product."[81] Guthy-Renker also contends that "there was no preexisting relationship with Guthy-Renker that would have heightened this matter to a case where a plaintiff could recover in the absence of physical injury."[82]

Ms. Blake may only maintain such a claim if she has suffered physical injury or has established a preexisting duty. Here, there is no preexisting duty alleged. But whether Ms. Blake has suffered physical injury from using the Moisturizer and from Guthy-Renker's conduct upon becoming aware of the contamination are disputed issues of material fact. Thus, summary judgment on a claim of negligent infliction of emotional distress claim is not warranted.

## I.  Count 8: Consumer Protection Laws

Ms. Blake's First Amended Complaint alleges that "[t]he actions of the Defendants set forth above violate state and federal consumer protection laws."[83] Guthy-Renker maintains that in regard to this claim, Ms. "Blake has not articulated which laws she references" and therefore, it is entitled to summary judgment as a matter of law.[84]  In response, Ms. Blake asserts that the deposition testimony of Dr. Richwald at pages 93-95 identifies the relevant laws.[85]  But the only law referenced by

---

[81] Docket 58 at 9 (Mot.).

[82] Docket 58 at 10 (Mot.).

[83] Docket 30 at 9 ¶ 26 (Am. Compl.).

[84] Docket 58 at 10 (Mot.).

[85] Docket 62 at 37 (Opp.).

Dr. Richwald at those pages is Title 17 California Code of Regulations Section 2500.[86]

That regulation refers to California reporting requirements and is not a consumer

protection law.  Thus, the bare allegations of Count 8 do not identify a legal basis for

relief and summary judgment to Defendants is appropriate on this claim.

### J.  Punitive Damages

Ms. Blake's First Amended Complaint also seeks punitive damages, alleging:

> The conduct of the defendants individually and jointly and severally was reckless and in deliberate disregard of the foreseeable consequences, and with reckless indifference to the interests of users such as Lisa Blake and her family, and calls for the imposition of punitive damages against all defendants individually and jointly and severally, in an appropriate amount to chill and deter such conduct in the future, with due regard to the nature of the culpable conduct at issue and the net worth of the respective defendants, and the amount of money and profit they realized from their culpable actions.[87]

Under Alaska law,

> The fact finder may make an award of punitive damages only if the plaintiff proves by clear and convincing evidence that the defendant's conduct
> (1) was outrageous, including acts done with malice or bad motives; or
> (2) evidenced reckless indifference to the interest of another person.[88]

Punitive damages "are a harsh remedy 'not favored in law.  They are to be allowed only

with caution and within narrow limits.'"[89]

---

[86] Docket 62-3 at 44 (Ex. 2 to Opp.: Richwald Dep.).

[87] Docket 30 at 9-10 ¶ 28 (Am. Compl.).

[88] AS 09.17.020(b).

[89] *Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995) (quoting *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264, 1266 (Alaska 1992); *Alyeska Pipeline Serv. Co. v. Beadles*, 731 P.2d 572, 574 (Alaska 1987)).

"Although a showing of actual malice is not required, the plaintiff must establish, at a minimum, that the defendant's conduct amounted to reckless indifference to the rights of others, and conscious action in deliberate disregard of those rights."[90] Reckless indifference includes a conscious choice or intentional course of action.[91] If "'there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice,' the trial court need not, and indeed should not, submit the issue of punitive damages to the jury."[92]

Guthy-Renker again asserts that Ms. "Blake's claim for punitive damages cannot stand, because she was not damaged by the product."[93] Additionally, it contends that Ms. "Blake has not produced any evidence to demonstrate that defendants engaged in reckless conduct which would rise to the level of punitive damages."[94]

Ms. Blake asserts that "[p]unitive damages are warranted where the evidence shows the defendant's conduct *merely evidenced reckless indifference to the safety or interests of others.*"[95] Ms. Blake maintains that "[t]he facts presented and discussed in this memorandum shows at a minimum substantial evidence of willful and/or reckless

---

[90] *Chizmar*, 896 P.2d at 210 (internal citations and citation marks omitted).

[91] *See Hayes v. Xerox Corp.*, 718 P.2d 929, 935 (Alaska 1986) (in defining reckless indifference, the court adopts Restatement (Second) of Torts § 500 definition of reckless disregard, which includes an "act or omission" that is "itself, intended, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others," and definition of reckless misconduct which "requires a conscious choice or a course of action").

[92] *Chizmar*, 896 P.2d at 210 (quoting *State Farm*, 831 P.2d at 1266).

[93] Docket 58 at 11 (Mot.).

[94] Docket 58 at 11 (Mot.); Docket 70 at 15 (Reply).

[95] Docket 62 at 38 (Opp.) (emphasis in original).

indifference to the safety of others."[96]   Ms. Blake focuses primarily on the delay in reporting the contamination to her, and contends that she has presented "evidence tending to show that Defendants acted, or failed to act, with reckless indifference to the possible consequences of its actions."[97]   She asserts that the evidence presented "creates at a minimum, a question of fact as to punitive damages."[98]

Ms. Blake contends that she only needs to establish that Defendants' conduct "merely evidenced reckless indifference," but the Alaska Supreme Court has explained that that indifference must be "sufficiently outrageous to be deemed equivalent to actual malice."[99]   Ms. Blake has not alleged that Guthy-Renker intentionally contaminated its product with potentially harmful bacteria.  Rather, the  parties clearly dispute whether the product was unsafe, and whether a notice to consumers was warranted, and if so, the appropriate timing of that notice.  However,  even when all justifiable inferences are drawn in favor of Ms. Blake on these disputed topics for purposes of this motion, reasonable jurors could not find by the requisite clear and convincing evidence standard that the 4-month delay in notifying consumers, or any other conduct by Defendants, was so outrageous that it could justify an award of punitive damages.  While Ms. Blake's expert, Dr. Richwald, concluded that "[t]his approximately four-month time period from when Guthy-Renker was first notified of having distributed a contaminated cosmetic product to the time Guthy-Renker notify[ed] customers who had received this product,

_____

[96] Docket 62 at 38 (Opp.).

[97] Docket 38-39 (Opp.).

[98] Docket 62 at 39 (Opp.).

[99] *Chizmar*, 896 P.2d at 210 (quoting *State Farm*, 831 P.2d at 1266).

represents an unreasonable and dangerous delay," he did not contend that this delay evidences reckless indifference to the rights of others, with conscious action in deliberate disregard of such rights.[100]  Thus, this issue of punitive damages should not be submitted to the jury, and Guthy-Renker is entitled to summary judgment on this issue.

### *CONCLUSION*

For the foregoing reasons, Defendants' Motion for Summary Judgment at Docket 57 is GRANTED in part and DENIED in part as follows:

I.    The motion is GRANTED as to Causes of Action 4, 6 and 8, that portion of Cause of Action 2 that alleged negligence per se, and Cause of Action 7 to the extent it pleaded a claim for intentional infliction of emotional distress, and the request for punitive damages.  These Causes of Action and the claim for punitive damages are DISMISSED with prejudice.

II.   Summary judgment is DENIED as to Causes of Action 1, 2, 3, and  5, Cause of Action 2 to the extent it contains a claim of ordinary negligence, and Cause of Action 7 to the extent it pleaded a claim for negligence infliction of emotional distress.

DATED at Anchorage, Alaska this 13th day of August, 2013.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[100] Docket 62-1 at 4 (Richwald Opinion).